IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE EXXON MOBIL CORPORATION DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br><br><br>ALL ACTIONS | Lead Case No. 3:19-cv-1067-K<br><br>(Consolidated with Nos. 3:19-cv-1068-K; 3:19-cv-2267-K; 3:20-cv-1280-K; 3:20-cv-2302-K; 3:20-cv-2295-K & 3:21-cv-0430-K)<br><br>(Consolidated Derivative Action)<br><br>**ORAL ARGUMENT REQUESTED** |

**NOMINAL DEFENDANT'S AND DEFENDANTS'
<u>REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS</u>**

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Matthew D. Stachel (*pro hac vice*)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Counsel for Nominal Defendant and Defendants*

Nina Cortell
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Tel: (214) 651-5000
Fax: (214) 651-5940

*Counsel for Nominal Defendant and Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement..................................................................................................1

Argument ....................................................................................................................2

I.      Plaintiffs Fail to Rebut the Fact That the Board Relied on a Reasonable Inquiry...............2

II.     Plaintiffs Fail to Rebut the Board's Good Faith. ................................................7

III.    Plaintiffs Fail to Rebut That a Majority of the Board Was Independent. ...........................9

IV.     The Court Can Consider the Documents Attached to the Motion, and Plaintiffs'
        Discovery Request Lacks Merit.......................................................................10

Conclusion ...............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abella* v. *Universal Leaf Tobacco Co., Inc.*,
  546 F. Supp. 795 (E.D. Va. 1982) .........................................................................5

*Barovic* v. *Ballmer*,
  72 F. Supp. 3d 1210 (W.D. Wash. 2014)...............................................................3

*Brosz* v. *Fishman*,
  No. 1:13-cv-753, 2016 WL 7494883 (S.D. Ohio Dec. 29, 2016)...........................3

*City of Orlando Police Pension Fund* v. *Page*,
  970 F. Supp. 2d 1022 (N.D. Cal. 2013) ...............................................................3, 9

*Copeland* v. *Lane*,
  2012 WL 4845636 (N.D. Cal. Oct. 10, 2012)..........................................................3

*Espinoza* v. *Dimon*,
  797 F.3d 229 (2d Cir. 2015)....................................................................................4

*Espinoza* v. *Dimon*,
  807 F.3d 502 (2d Cir. 2015)....................................................................................4

*People* v. *Exxon Mobil Corp.*,
  119 N.Y.S.3d 829 (TABLE), No. 452044/2018, 2019 WL 6795771 (N.Y. Sup.
  Ct. Dec. 10, 2019).....................................................................................................5

*General Electric Co. ex rel. Levit* v. *Rowe*, No. 89-7644, 1992 WL 277997 (E.D.
  Pa. Sept. 30, 1992) ...................................................................................................7

*Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan* v. *Andreotti*,
  No. 9714-VCG, 2015 WL 2270673 (Del. Ch. May 8, 2015) ...................................8

*Levine* v. *Liveris*,
  216 F. Supp. 3d 794 (E.D. Mich. 2016)...................................................................7

*London* v. *Tyrrell*,
  No. 3321-CC, 2010 WL 877528 (Del. Ch. Mar. 11, 2010) .....................................5

*Morefield* v. *Bailey*,
  959 F. Supp. 2d 887 (E.D. Va. 2013) ......................................................................8

*Operative Plasterers' & Cement Masons' Local Union Officers' & Employees'
  Pension Fund* v. *Hooley*,
  No. 12-10767-GAO, 2013 WL 5442366 (D. Mass. Sept. 30, 2013).......................10

*In re PSE&G S'holder Litig.*,
    801 A.2d 295 (N.J. 2002) ................................................................................6, 7, 8

*Sciabacucchi* v. *Burns*,
    No. S15-cv-7506 (PKC), 2016 WL 4074446 (S.D.N.Y. July 29, 2016) ...................................8

*Stepak* v. *Addison*,
    20 F.3d 398 (11th Cir. 1994) ...............................................................................7

*LR Tr. ex rel. SunTrust Banks, Inc.* v. *Rogers*,
    270 F. Supp. 3d 1364 (N.D. Ga. 2017) .........................................................3, 9, 10

**STATUTES**

N.J.S.A. 14A:3-6.3 ............................................................................................1, 2, 4

N.J.S.A. 14A:3-6.5 ............................................................................................1, 2, 8, 10

## PRELIMINARY STATEMENT

The New Jersey Business Corporation Act requires dismissal with prejudice of a derivative lawsuit where, as here, an independent board of directors has decided in good faith, based on a reasonable inquiry, that such litigation is not in the corporation's best interests.  N.J.S.A. 14A:3-6.5(5)(b).  Plaintiffs fail to rebut Defendants' showing that the ExxonMobil Board's decision is entitled to deference under the Act, and their Opposition ("Opp.") to the Motion to Dismiss ("Mot.") fails for two particular reasons.  First, to avoid dismissal, Plaintiffs must—but have not, and cannot—undermine the Board's independence and good faith, and the reasonableness of the Board's inquiry.  N.J.S.A. 14A:3-6.5(4), (5)(b).  Second, Plaintiffs do not dispute, and thereby concede, that their new theories of alleged wrongdoing are entirely absent from their demand letters (the "Demands")—and thus are improperly raised.  N.J.S.A. 14A:3-6.3(1).

Regarding the Board's independence, good faith, and reasonableness of its investigation, Plaintiffs' Opposition simply repeats the Complaint's conclusory allegations, and then proceeds to mischaracterize the 275-page investigative report (App. 5–285) and rely on case law that is either inapposite or actually supports dismissal.  Most curiously, Plaintiffs argue the investigation was unreasonable for purportedly failing to consider allegations made in the *Ramirez* and MAAG complaints, but they do not dispute that the investigation evaluated the *Demands'* allegations, which consisted of four core theories related to (i) "stranded" assets, (ii) proxy/GHG costs, (iii) impairment analyses, and (iv) proved reserves estimates.  That leaves Plaintiffs with no meaningful response—and no alternative but to rely on alleged theories that were *not* included in the Demands.

The new theories that Plaintiffs urge concern (i) alleged misstatements about the environmental benefits of ExxonMobil's products, and (ii) purported "greenwashing campaigns." But those theories necessarily fail because no demand asked the Board to investigate these issues

before Plaintiffs filed suit.  That failure violates N.J.S.A. 14A:3-6.3(1) and requires dismissal.

Accordingly, this action should be dismissed with prejudice.

**ARGUMENT**

**I.     Plaintiffs Fail to Rebut the Fact That the Board Relied on a Reasonable Inquiry.**

As shown in Defendants' Motion, the Board's investigation was indisputably reasonable as it involved the painstaking evaluation of each allegation made in the Demands, following interviews with 25 individuals, a review of 1.25 million pages of documents, testimonial transcripts, and 5,000 working hours by Simpson Thacher.  Plaintiffs, who now bear the burden of proof and persuasion, were required to provide particularized facts rebutting Defendants' showing. N.J.S.A. 14A:3-6.5(4), (5)(b).  Plaintiffs come nowhere close to satisfying their burden.

*First*, Plaintiffs' argument that the investigation "failed to consider" the *Ramirez* allegations is directly contradicted by the Report itself.  (Opp. 13–14.)  Plaintiffs admit that their Demands, like the *Ramirez* complaint, concerned ExxonMobil's public statements about "(i) proxy costs of carbon costs [sic] employed in its business planning decisions; (ii) its asset impairment analyses; and (iii) its proved reserves estimates."  (*Id.* 15.)  But Plaintiffs ignore that the Report directly considered and evaluated the merits of these allegations.  (Mot. 24 (citing Report Section 7(D) (proved reserves estimates), 7(E) impairment analyses & 7(F) (proxy/GHG costs in ExxonMobil's business planning decisions)).)  Contrary to Plaintiffs' contentions (Opp. 15–16 & n.5), the Report specifically evaluated allegations relating to (i) ExxonMobil's impairment analysis for its Rocky Mountain Dry Gas assets; (ii) its proved reserves estimates for Kearl; and (iii) U.S. GAAP issues pertaining to both.  (App. 16–17, 19, 39, 55, 101, 117, 130–135, 137–138, 162, 179.)

Plaintiffs' assertions that "the Report fails to mention whether any witnesses from [*Ramirez*] were interviewed or if the action was monitored" are simply false.  (Opp. 13.)  The Report identified 25 witnesses interviewed by Simpson Thacher, including individuals responsible

2

for ExxonMobil's use of proxy/GHG costs in business planning, "asset impairment assessments," "reserves estimation and reporting," and "processes and controls related to disclosures." (App. 85–86.) The Report also made clear that developments and filings in the *Ramirez* action were monitored. (*Id.* 38–40, 49, 83.) Plaintiffs also failed to identify *with particularity* any non-interviewed witnesses who possessed "knowledge that was unique and unobtainable without those interviews, and how those interviews if taken would have altered the Board's decision to refuse demand." *Copeland* v. *Lane*, 2012 WL 4845636, at *8 (N.D. Cal. Oct. 10, 2012) (dismissing complaint, explaining "the choice of people to interview or documents to review is one on which reasonable minds may differ"). Where, as here, the information provided to the regulators was reviewed, interviews with those regulators are unnecessary. *LR Tr. ex rel. SunTrust Banks, Inc.* v. *Rogers*, 270 F. Supp. 3d 1364, 1377–78 (N.D. Ga. 2017) (finding regulator interviews unnecessary because the "information that was produced to the Government investigators" was reviewed).[1]

*Second*, Plaintiffs' contention that the investigation failed to "properly consider" the allegations in the 2019 and 2020 MAAG complaints is misguided. (Opp. 11–13.) Plaintiffs do not dispute that their Demands (and indeed all other demands) asked the Board to investigate four core theories of alleged wrongdoing, namely the "stranded" assets, proxy/GHG cost, impairment, and proved reserves theories. (Mot. 4, 24; Opp. 13.) Nor do they dispute that these four theories

---

[1]    The three cases Plaintiffs cited (Opp. 13–14) are inapposite because they involved situations where (i) the Plaintiffs identified specific, necessary witnesses with knowledge who were not interviewed, (ii) the Company had been found finally liable for misconduct before the investigation was completed, and/or (iii) the Board provided conclusory justification for its decision. *City of Orlando Police Pension Fund* v. *Page*, 970 F. Supp. 2d 1022, 1032 (N.D. Cal. 2013) (finding plaintiff "identified witnesses who should have been interviewed but were not" where company had entered into non-prosecution agreement and paid $500 million penalty); *Barovic* v. *Ballmer*, 72 F. Supp. 3d 1210, 1215 (W.D. Wash. 2014) (finding regulator should have been interviewed where Company entered into settlement that required self-monitoring, and regulator might have had "highly material information" on expectations for self-monitoring); *Brosz* v. *Fishman*, No. 1:13-cv-753, 2016 WL 7494883 (S.D. Ohio Dec. 29, 2016) (finding regulator should have been interviewed where Board did not prepare a report explaining its findings, but only a conclusory letter saying no misconduct had occurred). None of these situations is remotely present here.

were present in the NYAG Action, *Ramirez*, and the 2019 and 2020 MAAG complaints.  (Mot. 24.)  All four of these theories were investigated and evaluated at length in the Report.  (*Id.* 4, 24.)

Instead, Plaintiffs suggest that the Board should have investigated two new theories MAAG identified in *2019*, *after* submission of the Demands.  In particular, Plaintiffs argue that the Board should have investigated allegations that ExxonMobil (i) allegedly misrepresented the environmental benefits of using certain of its products, and (ii) purportedly launched "greenwashing" campaigns.  (Opp. 7, 11.)  *But Plaintiffs do not dispute that no demand asked the Board to investigate these two theories.*[2]  Plaintiffs' failure to dispute that the Demands did not ask the Board to investigate this alleged wrongdoing warrants dismissal under N.J.S.A. 14A:3-6.3(1) for Plaintiffs' failure to first make demand on the Board before asserting these claims.  (Mot. 24–25.)

*Espinoza* v. *Dimon*, 807 F.3d 502 (2d Cir. 2015), on which Plaintiffs rely, only confirms that dismissal is appropriate here.  In *Espinoza*, the Second Circuit affirmed dismissal of a derivative lawsuit where the letter rejecting a demand did not indicate whether the Board investigated alleged misstatements/omissions, one of five claims raised in the demand.  *Id.* at 507.  The court nonetheless still dismissed the derivative claim, reasoning that the Board showed its knowledge of these issues based on other statements in the refusal letter.  *Id.*  By contrast, each claim the Demands asked the Board to investigate here was *in fact* investigated.[3]

---

[2]   By contrast, other theories that were stated in the demands were investigated, including (i) the Assad Demand's assertion that ExxonMobil's compensation structure purportedly incentivized inflating proved reserves estimates, and (ii) a Russia-Ukraine sanctions issue raised in a separate demand.  (Mot. 4 n.2.)

[3]   Plaintiffs' reliance on stray references to the existence of MAAG's investigation is misplaced.  (Opp. 7, 11.)  No demand—the last of which was dated August 26, 2019—mentioned MAAG's two new theories.  (App. 46–47.)  In all events, Plaintiffs do not allege these new theories were materially different from what was investigated, including ExxonMobil's compliance system and public disclosures.  Where, as here, the investigation "canvasse[d] the waterfront" of the Demands' stated theories, Plaintiffs cannot show the investigation was grossly negligent by saying it "fail[ed] to touch on some minor allegation."  *Espinoza* v. *Dimon*, 797 F.3d 229, 239 (2d Cir. 2015).

*Third*, Plaintiffs' argument that the investigation relied excessively on the NYAG Decision is baseless. (Opp. 14–16.)  Given that the NYAG Action was the only matter that had been tried to a final judgment and the reliance on NYAG's theories by the Demands, *Ramirez*, and MAAG, the Working Group sensibly viewed the decision as "confirm[ing]" their findings and conclusions. (App. 11, 84.)  As shown above, the Report evaluated all of the Demands' allegations, including those borrowed from *Ramirez* and MAAG's related theories that she adopted from NYAG.[4]

Plaintiffs' assertion that the NYAG Action did not involve a claim "that any disclosure in Exxon's Form 10-K was misleading" or that its financial disclosures "were impacted" is wrong. (Opp. 15.)  The language Plaintiffs quoted from the decision arose in the context of ExxonMobil's Form 10-K risk disclosures and proxy/GHG cost disclosures.  *People* v. *Exxon Mobil Corp.*, 119 N.Y.S.3d 829 (TABLE), No. 452044/2018, 2019 WL 6795771, at *9–10, *20 (N.Y. Sup. Ct. Dec. 10, 2019).  As projected future costs, proxy/GHG costs would not affect ExxonMobil's reported financial results.  But the court recognized that NYAG's claims about impairments and reserves, if viable, would have affected ExxonMobil's Form 10-K disclosures, and found that (i) the Form 10-Ks were "true and correct with respect to ExxonMobil's proved reserves," *id.*, at *19, and (ii) NYAG "failed to demonstrate that ExxonMobil's impairment *disclosures* and accounting practices in 2015 were inconsistent with GAAP," *id.*, at *29 (emphasis added).

*Fourth*, Plaintiffs' argument that the Working Group members (Braly, Frazier, and Weldon) were "conflicted" is based only on the unremarkable facts that they (i) are named as

---

[4]   Plaintiffs' assertion that the Board "prejudged the merits of the Demands" lacks merit. (Opp. 11, 14.)  *London* v. *Tyrrell*, No. 3321-CC, 2010 WL 877528 (Del. Ch. Mar. 11, 2010), on which Plaintiffs rely, is inapposite.  In *London*, the committee members "reviewed the merits of plaintiffs' claims before [the committee] was ever formed" and one member testified he had "read [plaintiffs' claim and] . . . *attacked* it all." *Id.*, at *15–16 (emphasis in original).  No such facts are present here.  Plaintiffs also cite *Abella* v. *Universal Leaf Tobacco Co., Inc.*, 546 F. Supp. 795, 799 (E.D. Va. 1982) for the purported "ease" with which an investigation could be predetermined, but that court dismissed the complaint after finding a Board committee was independent and there were no facts suggesting a predetermined outcome.

defendants in this action and were targets of the Demands, and (ii) sat on Board committees that purportedly would have approved the challenged public statements.[5]  (Opp. 17.)  Plaintiffs cite no authority, much less any in New Jersey, supporting their argument because none exists.  As Defendants showed, the New Jersey statute provides—and its Supreme Court has long held—that these facts *cannot* cause a director to lack independence or be "conflicted."  (Mot. 20 (citing N.J.S.A. 14A:3-6.5(7)(b)(ii) ("naming of the director as a defendant . . . or as a person against whom action is demanded" insufficient), (iii) ("approval by the director of the act being challenged" insufficient); *In re PSE&G S'holder Litig.*, 801 A.2d 295, 314 (N.J. 2002)).)

Nor may Plaintiffs challenge the inquiry's reasonableness, or the Working Group's or Simpson Thacher's independence, by complaining that the Working Group chose not to undertake an independent "forensic review."  (Opp. 17.)  Plaintiffs ignore that the "forensic review" the Working Group decided not to perform was "of the financial assumptions and cash flow analyses that ExxonMobil used" because the "nature of the Allegations and the governing legal standards" did not call for such a review.  (App. 137–38.)  And Plaintiffs alleged no particularized facts challenging those assumptions or analyses.  The Working Group was not required to conduct this unnecessary review because, as the New Jersey Supreme Court explained, there is "'no prescribed procedure'" for an investigation.  *PSE&G*, 801 A.2d at 315.

*Finally*, Simpson Thacher was undeniably independent.  (Mot. 20–22.)  Plaintiffs' conclusory assertion that Simpson Thacher had "conflicting responsibilities" as both investigative counsel and litigation counsel is false.  (Opp. 18.)  Simpson Thacher was only retained as investigative counsel.  (Mot. 20–21 (citing App. 69–70, 288–89).)  Other counsel—Paul, Weiss

---

[5]   Plaintiffs repeat their defective allegation that Weldon lacked independence in January 2020 because he was not elected to the Board in June 2021, ignoring that after-the-fact occurrences cannot show he was conflicted.  (Mot. 20 n.4.)

and Haynes and Boone—were retained as litigation counsel.  Under binding New Jersey law, Simpson Thacher thus faced no disabling conflict.  *PSE&G*, 801 A.2d at 316.[6]

Plaintiffs' fallback allegations that Simpson Thacher represented *other corporations* for which Frazier, Weldon, Burns, and Oberhelman had served as officers or directors in *unrelated* lawsuits cannot impugn the firm's independence. (Opp. 18–20.) Plaintiffs do not allege with particularity that Simpson Thacher represents *these directors* in any related litigation.  Nor do they allege that the *same* Simpson Thacher lawyers were involved in the four cited representations. More substantial contacts than those Plaintiffs alleged have long been held insufficient to render investigative counsel conflicted.  In *Levine* v. *Liveris*, the court rejected allegations that investigative counsel lacked independence where counsel "previously represented [the corporation] and previously recommended rejection of shareholder demands." *Liveris*, 216 F. Supp. 3d 794, 809–10 (E.D. Mich. 2016).  And in *General Electric Co. ex rel. Levit* v. *Rowe*, the court rejected a claim that investigative counsel lacked independence even though it had represented the company's subsidiary in a "significant" lawsuit, reasoning that "relatively minimal contact . . . cannot support the assertion that the committee was a sham."  *Rowe*, No. 89-7644, 1992 WL 277997, at *6 & n.3 (E.D. Pa. Sept. 30, 1992).

## II.    Plaintiffs Fail to Rebut the Board's Good Faith.

In an unavailing effort to impugn the Board's good faith, Plaintiffs raise an assortment of objections, all of which distort the facts and law.  (Opp. 20–24.)  Indeed, most of these deficient claims are substantially identical to those this Court deemed insufficient to warrant discovery.

---

[6]   *Stepak* v. *Addison*, 20 F.3d 398 (11th Cir. 1994), on which Plaintiffs rely (Opp. 18, 20), is inapposite.  In *Stepak*, unlike here, the investigative counsel also represented "the alleged wrongdoers in criminal proceedings involving the very subject matter of th[e] demand."  20 F.3d at 403–04.

7

*First*, the Board did not "fail[] to participate" in the investigation by creating the Working Group to evaluate the Demands and recommend a response to the Board. (*Id.* 21.) The New Jersey statute and case law permit the Board to make the final decision and to follow any procedure it deems proper to conduct the investigation. N.J.S.A. 14A:3-6.5(2)(a); *PSE&G*, 801 A.2d at 315. In fact, courts have expressly recognized that appointing an "evaluative" group of directors with "only the power to make recommendations to the Board" is "procedurally sound." *Sciabacucchi* v. *Burns*, No. S15-cv-7506 (PKC), 2016 WL 4074446, at *6 (S.D.N.Y. July 29, 2016); *see Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan* v. *Andreotti*, No. 9714-VCG, 2015 WL 2270673, at *13, *32 (Del. Ch. May 8, 2015) (dismissing derivative complaint where board authorized two directors to investigate demands, but "[t]he Board retained the authority to act with respect to those demands"), *aff'd*, 132 A.3d 748 (Del. 2016) (TABLE).

*Second*, Plaintiffs' argument that the Board "did not meet" with, and "were not aided by," Simpson Thacher fails to rebut the Board's good faith. (Opp. 21.) Again, under settled New Jersey law, the Board was entitled to entrust its investigation to the Working Group and a law firm. (Mot. 17, 21.) And Mr. Curnin of Simpson Thacher met with the Board on January 29, 2020 to discuss the Report and its conclusions and recommendations. (*Id.* 22; App. 293.)

*Third*, Plaintiffs' contention that the Board "failed to meaningfully review" the Report because it ultimately refused the Demands seven days after receiving a copy does not rebut the Board's good faith. (Opp. 21.) There is no set period of time during which the Board must review the Report and deliberate. Plaintiffs failed to distinguish *Morefield* v. *Bailey*, 959 F. Supp. 2d 887, 902 (E.D. Va. 2013), which reasoned that even "one hour or shorter" of deliberation would not vitiate the Board's reasonableness, much less good faith. That is especially so here where the Board would have known of the NYAG Decision, which Plaintiffs cannot credibly dispute

addressed the core allegations in the Demands.  Plaintiffs' argument (Opp. 22 n.9) that the Board acted precipitously because the Report supposedly did not address the *Ramirez* or related MAAG allegations fails because those allegations were, in fact, addressed in the Report.  (*Supra*, 2–4.)

*Fourth*, Plaintiffs' assertion that the Board should have "conduct[ed] a formal question and answer session" to discuss "why the Report failed to address the Securities Class Action and Mass AG Action" (Opp. 22) lacks merit.  Those allegations were addressed in the Report.  (*Supra*, 2–4.) Plaintiffs also ignore that the Board had a formal question-and-answer session with the Working Group and Simpson Thacher on January 29, 2020.  (App. 293–94.)

*Finally*, Lead Plaintiff nonsensically argues that the Board's February 5, 2020 offer to allow him and his counsel to review the full Report (subject to a confidentiality agreement) somehow affected the Board's good faith in January 2020.  (Opp. 22–23.)  And, in all events, Lead Plaintiff does not dispute that he has had over one year to review the Report, but nonetheless still proffers the same, meritless objections that this Court found insufficient to warrant discovery.[7]

### III.  Plaintiffs Fail to Rebut That a Majority of the Board Was Independent.

Like their challenge to the Working Group members' independence, Plaintiffs' allegation that a majority of ExxonMobil's 11-member Board lacked independence when it refused the Demands is based on no more than that (i) Plaintiffs named them as defendants in this action and some were targets of the Demands, and (ii) some of the directors approved the 2015 Form 10-K

---

[7]   Plaintiffs' reliance on *Page* is misplaced because in that case the board committee *never* provided (or even offered to provide) a copy of the report to plaintiff or the court.  *Page*, 970 F. Supp. 2d at 1030.  *Rogers*, cited above, is on point because in that case the court dismissed the complaint—and distinguished *Page* —where the board committee provided the plaintiff and the court with an unredacted version of the report, which the plaintiff, as here, had for over one year before filing its operative complaint.  *Rogers*, 270 F. Supp. 3d at 1378.

that Plaintiffs challenge.  (Opp. 24–25.)  Again, these conclusory allegations are insufficient under the New Jersey statute and settled New Jersey law.  (*Supra*, 5–6.)[8]

## IV.  The Court Can Consider the Documents Attached to the Motion, and Plaintiffs' Discovery Request Lacks Merit.

The documents attached to the Motion may be properly considered because the New Jersey statute provides that motions to dismiss derivative actions "shall" affirmatively set forth "facts to show" independence, good faith, and reasonable inquiry.  N.J.S.A. 14A:3-6.5(5)(a).  The statute then places the burden on Plaintiffs to rebut the motion's showing with particularity, and Plaintiffs are not entitled to favorable inferences.  N.J.S.A. 14A:3-6.5(4).  Courts construing similar statutes have found that courts may "look beyond the pleadings to the evidence in the record to resolve" such motions. *Rogers*, 270 F. Supp. 3d at 1369 (dismissing complaint under Georgia statute); *Hooley*, 2013 WL 5442366, at *3 (considering declarations on motion to dismiss under Massachusetts statute).  Plaintiffs' request for discovery fails because they have made no motion providing good cause why discovery is needed, and their prior motion was rejected. (ECF No. 85.)

## CONCLUSION

Under N.J.S.A. 14A:3-6.5, this action should be dismissed with prejudice.  The Board was comprised of more than a majority of independent directors who rejected the Demands in good faith based on a reasonable inquiry, as detailed in the Report.  Plaintiffs' arguments to the contrary, which are based on raising *post hoc* theories and mischaracterizations of the facts and the law, cannot rebut Defendants' showing.  As the Board recognized in January 2020, this derivative action would be contrary to ExxonMobil's best interests, and it should thus be dismissed.

---

[8]  Plaintiffs fail to distinguish *Operative Plasterers' & Cement Masons' Local Union Officers' & Employees' Pension Fund* v. *Hooley*, No. 12-10767-GAO, 2013 WL 5442366 (D. Mass. Sept. 30, 2013).  (Opp. 25.)  There, the court held the denial of a dismissal motion in a related case did not render the directors liable because they were not "primarily liable for any misstatement" in that action. *Hooley*, 2013 WL 5442366, at *4. Similarly, here, there is no claim in the NYAG, *Ramirez*, or MAAG complaints against the directors who rejected the Demands.

Dated:  October 29, 2021

Respectfully submitted,

*/s/ Daniel J. Kramer*
Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Matthew D. Stachel (*pro hac vice*)
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
mstachel@paulweiss.com


*/s/ Nina Cortell*
Nina Cortell
Texas State Bar No. 04844500
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com

*Counsel for Nominal Defendant and Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Reply has been

served by electronic CM/ECF filing, on this 29th day of October, 2021.

*/s/ Daniel J. Kramer*
Daniel J. Kramer